All right. Robert Morrison. Morrison. Thank you, Your Honor. Scott Morrison on behalf of Mr. Lyons. There are two claims at issue in this case, one under the Truth in Lending Act and the second one under the Real Estate Settlement Procedures Act. I'm going to address the court's, district court's, ruling on the Truth in Lending Act. So the district court erred here because it interpreted a 1974 statute based on a 2009 amendment to Regulation Z. So what happened here was, if you look at the claim, the statute that we're worried with is 1666H, 15 U.S.C. 1666H, which is on its face pretty clear. It just says a card issuer may not take any action or offset of cardholders and arising in connection with a consumer credit change action under the relevant credit plan. So that statute was put in place in 1974, has never changed. And so what the court ended up saying though was that, and there's no dispute here, in page 11 of their brief they admit that there was a credit card issue to my client for the purposes of drawing on this line of credit. So we have a credit card issuer, which matches. So the issue became credit card plan. And we said that the word credit card has a specific definition that the court should apply. The district court said no, when you add the word plan it changes it. And I'm going to look at this definition that was added in 2009 that said it doesn't apply to credit plans or open-end credit plans that are subject to a home mortgage. That was wrong because, first of all, that addition in 2009 had nothing to do with the statute we're concerned with. What that addition was added for was because Congress passed a law called the Credit Card Act in 2009 that was implemented. That particular act added disclosure requirements for credit cards. What the CFPB did was, or they went ahead and amended the definition of credit card to adjust for that particular provision. And when they added it, what they did was they said this would apply, it doesn't apply to open-end credit if the home's involved. They added if the home's involved. And if you look at the rationale for that was because there were already existing disclosures applicable to home equity loans. I agree with you that in 1666H we got to understand what credit card plan means. But as I read your brief, you're claiming that a HELOC is a credit card. Yes. In this particular instance, Your Honor, it is a credit card. So you're not claiming that... I just want to... Sure. It seems to me that I guess you interpret any device language on as including any credit arrangement. Which I think is a, you know, if you want to advance that, you can, and we might embrace that. Or we might say no, that credit card's talking about ways that you access a particular credit arrangement. It seems like the board, in contrast, doesn't take that position that a HELOC is a credit card. It says a HELOC is a credit card plan. And to me those are different positions. But yours seems to be a HELOC is a credit card. In this instance, there's no dispute that there was a credit card issued for the purposes of accessing this account. Sure. That may make... I'm sorry, go ahead. I'm sorry. So, okay, when you look at the Truth in Lending Act, you got to understand there's really two. It's primarily a disclosure statute requiring disclosures. There's also some prohibitions. So the prohibition here was specific under 1666H. When you're talking about that they take a different position, if you look, when they added that language in 2009, it was in response to the Credit Card Act, which was a disclosure act. And they had to adjust. And what they said was the reason we're going to exclude home equity loans from the operation of the new statute, which was 1666I-1, is because there's separate disclosures already required for home equity loans. It wasn't, there's nothing to indicate that they intended to undo the statute. And it would be ironic that a statute that they added, that was increasing consumers' rights, would silently take away another right in the Let's see if I understand where we're going here. I understand the argument that this HELOC involves a credit card. And therefore the HELOC, which involves a credit card, and discusses how that card can be used, is a credit card plan. I may make any sense to me, is that a HELOC is a credit card. I mean, a credit card, the statute seems to be talking about as devices to access credit. And if, and I'm not, I think, you know, the first point, whether it's a credit card plan in this case, is an interesting question. And, you know, we got an undefined term, you know, most of the time the statute talks about what would be a HELOC, it is using, you know, words other than a credit card plan. Now that doesn't mean it can't still be a credit card plan, but it's using other words almost every time. Yeah. Right, and again, you have to take it in context. First of all, if you accept that, how the definition that was added in 2009, which would mean if we filed this case in 2005, credit card plan would only have one meaning, and at that point credit card meant that you have a device that you access the account. There would be no difference. That could be wrong, that could be wrong to rely on that regulation that came later. I get that, that could be wrong. But we also, in the 1637 and in the civil liability section, so it's not just in that situation. We have most of the time when the Act, forget the regulations, is talking about things that would be HELOCs, it's not calling them credit card plans. Now, I don't think that's the end of the question, because it might still be a credit card plan, whatever that means. I guess we'll make that decision perhaps in this case. But yeah, so the district court could be wrong, but that doesn't mean, you know, on that point, but that doesn't mean you win necessarily. My point, Your Honor, is when you mentioned 1637, for instance, that's a disclosure statute that provides specific disclosures being required when you have a home equity plan. It is not addressing whether or not they have the account if the person doesn't pay, okay? The same is true for the 1026.6 that the district court referred to. Those are disclosure provisions. And again, it's understandable that the disclosure for a home equity loan would be different than a disclosure for just another open-end credit. That's why there's a distinction. When it comes to disclosures, there's a prohibition that's a basic rule that you can't take money from a debtor out of their bank account without any judicial involvement. But it's only a prohibition if it's a credit card plan. So that's what, and I'm not, I think, it feels like we're playing around on the fringes when the question is whether it's a credit card plan or not. Right, and my point is, when you're looking at the term credit card plan, first of all, I think it's sort of focusing on that and ignoring the first part, which says, do you have a card holder and do you have a card issuer? Again, we have a card holder, we have a card issuer. In this case, there's no dispute. What if you had a HELOC that didn't involve a credit card? A HELOC is a line of what you allege occurred here and unlike the actual agreement that's attached in the record, it didn't involve a credit card. So the only way you could get it, you call up your banker, say, hey, I'd like $5,000 transferred to my checking account. Would that be a credit card account if there's nothing that resembles a card or a plate or what the definition says is any device and there's cases that hold that even an account number can be considered a credit card under that definition. But if you're saying it didn't have a physical credit card and your definition of credit card is limited to a physical credit card, then yes, the HELOC would not be covered by this provision. But we don't have that case. We have a physical credit card even. And that's fair. So the analysis would be, it would be that rather than have some categorical rule, the HELOCs are always credit cards or credit card plans. I don't think you have to have a category. My point is for the purposes of this, the decision by the district court was an error because, and I'm out of my time. My fault. Go ahead. Sorry. You may proceed. Okay. So the district court said we're going to, and here's the thing, when you say the credit card plan has a separate, it's a separate definition, all that's changed is we add the word plan and you're saying that changes the definition of credit card. We don't agree with that concept. I mean, the word plan is nothing more than just talking about, you know, the same as they could have said credit card agreement. The other thing is when the court, if you look at the court's opinion, they converted the credit card plan, if you're saying that's an important term, then she talks about the definition that she used in 2009, it says credit card account. So they're different terms. So if we're, you know, we're focused on the word plan, she didn't address plan. She addressed credit card account based on the definition that was added 37 years later. So, yeah. I have a question. Yes, you are. What do you do, or what do we do with the fact that discretion in dealing with the exemptions of classes of transactions that may be necessary to implement the Congressional Act, taken with the fact that CFFB and its predecessor both defined relevant positions of the RESPA as excluding open-end lines of credit. What do we do with that, that they address the RESPA issue? I'm happy to address it, but Mr. Robinson was going to address RESPA. Is that okay? Thank you. Mr. Robinson. May it please the Court, Philip Robinson. Judge Floyd, the answer to that question on our argument and what we presented in the briefs is below, Mr. Lyons did assert a claim under the regulations and the statute. On appeal, we focused on the statutory QWR claim, and we go to your question about the regulations, and the CFPB does not address the statutory claim at all. It argues, which we haven't preserved, I don't think, because we haven't advanced the reg X notice of error or request for information claim. We've advanced the RESPA QWR 2605E claim. So, we think that yes, and we conceded in our briefs, there is some authority for the CFPB to exempt certain classes of transactions in regulations. Under Article 1 of the Constitution, there's no authority that Congress has to delegate to the CFPB to exempt from the statutory claim classes of transactions, and we know Congress did exempt certain classes of transactions in RESPA 2605I2. That's the particular servicing statute at issue here. The GSEs, the Freddie Mac, Fannie Mae, and the other government entities, they're all exempted. At 2606, business loans are exempted from RESPA. So, Congress has specific statutory exemptions for RESPA that apply to the servicing statute at issue here for Mr. Lyon's second claim, but Congress did not include HELOCs there. And we know from dozens of cases that we've cited, or multiple, the Hillman, Reyes, Russell, Noah, a court like that, they can't add exemptions to a statutory scheme. But we concede, Your Honor, that the agency does have the authority to adopt the legacy regulation that HUD had, exempting from regulations HELOCs, but that the agency, no agency, has the authority to accept the legislative power that Congress has enacted in the statute. So, that's sort of our answer here. Congress, why can't Congress, you know, it may be odd, maybe, but there's lots of things that, you know, seem like Congress is, you know, delegating to agencies. And, I mean, it just seems, I mean, doesn't Congress in 2617 specifically authorize the board to do what you say they can't do? Right, 2617A is what you're addressing, Judge Qualabong, and that is dealing with regulations. It is authorizing, like hundreds and thousands of probably other statutes, they authorize an agency to create regulations and rules. They do not authorize, Congress cannot delegate its Article I powers to an agency to create exceptions to classes of transactions that are in the statute, that qualify. And we think the definition in the statute, 26021, of a federally related mortgage on all fours, there's really no dispute that a HELOC would meet that definition. And there are, as I pointed out, there are no statutory exemptions for HELOCs. There are statutory exemptions for others. So, within the regulations, Congress basically made a policy choice. You, agency, if you have too much trouble figuring out regulations that would apply to HELOCs, you have our authority in the regulations to exempt from whatever regulations we are broadly giving you to exempt out classes of transactions. So, that's our basic argument here. And then, more precisely, the other problem is with 2617A, at 2605, that's the servicing statute, J, there the authorization to CFPB was regs to carry out this section. Not regs to take away the rights given by this section. So, there's two authorization statutes in play, and we discussed this in our brief, 2607, 2617A, which the district court adopted below, 2605J, which we point out, has a different scope. And you have to read those together because they were amended at the same time in the Dodd-Frank Act. Congress didn't mean that one statute would trump the other statute. The case law has to be read together, and we cite the Buster case for that. There's a more fundamental problem under RESPA for the HELOC issue is, this is the judgment on the pleadings case. So, the inferences are supposed to be in favor of Mr. Lyons, and we're not going to argue today and go back to some of our arguments, but I do want to point out to the court, this is the second time this case has come up to the court. Before the first time, PNC filed a verified answer. At paragraph 15 of its verified answer at JA11, PNC admitted, without qualification, to the basic premise. At all times since the merger, its merger with National City, PNC has acted as, quote, servicer of Lyons HELOC loan account, persuadant to 12 U.S.C. 2605, end quote. It's very difficult for me to understand, based on the pleadings that were before the district court, to say that a HELOC is not subject to RESPA when the answer from the defendant, without qualification, admits that allegation. So again, for statutory purposes, we think we're on all fours for that claim, and we have an advanced notice of error and request for asserted in a complaint, but we haven't advanced those in the brief. We tried to, frankly, just try to make it simple because it's complicated, right? They did give some regulatory authority to the CFPB, and it's not our job here to make an argument about, you know, the policy choice that they've made that we may disagree with. The next thing is, there's a split of cases. Our briefing goes through those. The circuit court, or the district court below, adopted what we call the minority cases. That's the Chamber loan line of cases. I don't believe there's any circuit court decision squarely addressing this issue. Does RESPA apply to HELOC? There is a third circuit case, I think it's quoted within the block quote on Hawkins that we have in our briefing, and there was an assumption in the decision, but this question really wasn't presented. So to some extent, it's a first impression, but we've given you, both sides have given you all the cases, I think even the CFPB. There's a split, and I think you'll see in what we call the majority line, the Hawkins line, the courts look to the statute, the statute controls, not the regulations. The regulations have to be consistent with the statute, and here we haven't advanced our statutory or regulatory claim. So we think the Hawkins line is more in line, and then we would ask that the court reverse the district court's ruling on the RESPA count. HELOC squarely falls within the definition of a loan subject to RESPA. There are exceptions for regulations, but we didn't preserve that issue, so we don't think it's properly presented by the CFPB's brief, which doesn't address the statutory claim at all, and we don't think it's really, it's not clear to understand what the PNC's argument is, except that they think that the regulation can amend the statute, which that's basic constitutional Article 1 provision, is the agency does not have the authority to amend a statute. Should we engage in some policy consideration that, for example, in a HELOC, interest rates would tend to be lower than on a other account, would lessen the foreclosure possibility? Aren't there any differences in the way that a home equity line works, as opposed to playing credit cards, which seem rational and reasonable for supporting their position? Judge Boyd, I'm going to address that from the RESPA perspective a little bit, and Mr. Boretson might get up and rebuttal and do some a little bit more on their Truth in Lending Act, but it's a, that's a very good question. The ABA's amicus brief on behalf of PNC disclaims any argument about RESPA, but they spend a substantial amount of pages talking about foreclosure prevention. What's the one statute that's before the court in this case that deals with foreclosure? RESPA, 2605 K1C, and then one of the purposes is to protect homeowners from foreclosure, but there's no express purpose under the Truth in Lending Act for that. So, so we think we're, we're on all fours that, that RESPA, and from a policy standpoint, our argument here, and why that should apply. The, the court doesn't need to get to some of the, the, and typically when I'm in here in other cases, the court is, has tried to shy away from a policy choice that the court itself, or the parties themselves, might have made a different choice, right? We know, we know from RESPA point of view, and I'll just sum up this way, the remedial purpose, the broad purpose, they use any to define any qualified written request, any federally related loan. We know the Carrington case says that's broad. The Roth case, the Renford case, the Wirtz case, the Morgan case from this court, the Harrell case, I think Judge Audubon was on, and again the Carrington case talk about the broad remedial purpose. That's both statutes. So the policy answer is, I think the statutes need to be read broadly, not narrowly, like the, like the district court did. Unless there's any other questions on RESPA, I appreciate you letting me go over a little. Thank you so much, Mr. Robinson. Ms. Garlock. Ms. Garlock, I don't want to put any extra pressure on you, but you're here as a friend of the court, and I want you to be friendly to the court and explain this with being equi-posed in terms of give us the unvarnished best guidance as to what this law should be interpreted. I will do my best to do that. May it please the court, Stephanie Garlock for the CFPB as amicus. To begin with the TILA question, there are two major points that I think help explain why TILA's offset provision covers the credit card plan here and why this is a credit card plan. First, when we talk casually about a credit card, we might think that it involves a very specific financial product that you might be familiar with, a card in your wallet accessing an unsecured and revolving line of credit. But TILA and Regulation Z don't take so narrow an approach. Under that statute and regulation, credit card plans can govern lines of credit that are secured or unsecured so long as consumers can use a credit card to account and HELOC account. The two are not mutually exclusive. So counsel, does that mean we look to the HELOC plan, see if it involves a card and talks about terms and how that can be used? It's kind of a case-by-case inquiry to what is involved in a particular HELOC to see whether it's a credit card plan? I think that makes sense. I think that it might not require that much digging, but the question is whether there is this specific type of access device and Congress made the judgment that those access devices pose particular types of risks. And just to give you a little bit of something to hang on to when deciding whether the credit card account here is also a HELOC account and vice versa, I think you can find this in a couple of different places in the regulation and the regulatory history that something can be both a HELOC account and a credit card account, which would mean that it's governed by a HELOC plan and it's also counts as a credit card plan. The first place is in that 2010, in the Card Act, in the statute, the statutory term was a credit card account under an open-end consumer credit plan. And my understanding of PNC's argument is that they think that this is not a credit card account because it's a HELOC. But the regulations that the board put in place in 2010 would have been entirely unnecessary. They added that parenthetical saying not home secured. That would have been unnecessary if a credit card account already wouldn't cover a HELOC account accessible by a credit card. There are some other places in the regulation you could look to see that something can be both a credit card account and a HELOC account. For example, in that 2010 Card Act rulemaking, 75 fed reg at 76.78, the board said that an exemption would cover HELOC accounts even when they are accessed by a credit card account. A year earlier in the 2009 rulemaking, the board wrote that an exemption would cover the following types of credit card accounts and then parentheses the first example listed is a HELOC account that would be subject to 226.5e even if it's accessible by a credit card. That's 74 fed reg at 53.35. And so I want to take, so both of those are examples where the board specifically decided to carve out HELOC accounts because there were alternate protections in place for HELOC borrowers or because HELOCs might pose specific risks. Generally that happened at the application or solicitation stage and the Bureau acknowledges that different rules have applied for HELOCs in those instances, but here we're in a world where there are no alternate protections for credit card borrowers who are trying to access their home secured line of credit. And the board and the Bureau have made clear that when the general terms are used, those generally applicable provisions should continue to apply. The board made that clear in in that 2010 Card Act rulemaking where they put in place the exemption that the history that PNC tries to give you of different treatment of HELOCs is really just cherry-picked examples from those express exemption decisions. We don't have an express exemption decision here. With my remaining time I'd like to just address Judge Floyd's question about the policy concerns here. And this protection and the whole suite of protections that the Fair Credit Billing Act put in place for credit card borrowers do have a place for borrowers who are accessing home secured lines of credit. For the offset provision specifically you can just look to the justification Congress gave in the first place for the offset provision. HELOC borrowers who are using a credit card too might have valid defenses to collection and that's why we want to prevent the banks who happen to have both the credit account and the credit card borrowers are able to assert those defenses in court. Let me ask you this, has CFPB ever released any guidance or rules that treat HELOC as an equivalent to a credit card plan? So we've not had any regulation about the offset provision specifically but I just where we refer to a HELOC account as a credit card account and it's also true that many of the protections for credit card plans have applied to HELOCs that are accessible by a credit card. For example until the 2009 rulemaking so for many decades the same regulations governed account opening and periodic statement disclosures for both credit cards accessing unsecured and home There are other protections in the Fair Credit Billing Act including rights of cardholders to bring claims against the card issuers but limitations on those liabilities that would make sense to apply to cardholders who have a HELOC as well. There are other provisions in 1026.12 for example 1026.12A and B those have limitations on unauthorized issuance of credit cards. You also wouldn't want someone to be able to send a credit card unsolicited to a HELOC borrower that might be intercepted. There are also limitations on liability for unauthorized use. PNC hasn't necessarily gotten into all of the limits of its arguments but it's clear that this suite of credit card protections doesn't make sense to carve out a certain set subset of credit card borrowers just because of the type of credit that they're accessing. Well historically though we've treated credit card plans different from where people put up their homes as collateral for the money. Isn't that a historical fact? It's true that there have been express exemptions decisions made for HELOCs in certain instances especially when it comes to application disclosures or because of the importance of protecting homes from foreclosure. But would a ruling in Mr. Lyons favor unravel that distinction, historical distinction? No it would not because when the board put in place or the Bureau put in place those distinctions they were very careful to exercise the exemption decision and use specific language that would allow the exemption to be cabined to the specific provisions at issue and I know I'm far over time but if I could just respond to the concern about the risk of foreclosure. It's also not true that removing the protection of the offset provision from credit card borrowers accessing HELOCs would necessarily prevent any foreclosures. Many HELOC borrowers will also have a primary mortgage. They might not have enough money to pay everything and the point is to give consumers control over their deposit accounts so that they can pay their obligations as they think is appropriate. A HELOC borrower could be using those funds that might have been taken by an offset to pay their primary mortgage because they might think that there is a greater risk of foreclosure there. So it's not consumer protective to remove this protection for credit card borrowers accessing HELOCs. It would not necessarily prevent any foreclosures. Are you going to comment on the RESPA claim? I'm happy to if you would like. I would like to hear your viewpoint. It sounds like you didn't have any qualms with the district courts decision on RESPA. Mr. Lyons says that the statutory provision that allows the board to create exceptions doesn't permit it to create this exception for HELOCs. It sounds like you disagree with that and I'd like to hear why. Absolutely. So we agree with the district court and think that the court could just follow that reasoning and we do disagree with Mr. Lyons' reading of both the extent of the exemption decision in 2617 and whether or not there's any conflict with 2605. On the other hand, I think it's very clear just from a reading of the statute that the purpose of this is to allow, there's nothing in the statute that says those regulations can only alter other regulations. The purpose is clearly and the text clearly allows exemptions from the statute itself and we think that the case law that has grappled with 2617 has appropriately recognized that. I also don't think there's any conflict with the more specific regulatory authority in 2605J. There the board was, their Congress was instructing that the HUD at the time and now the Bureau shall issue regulations which really that regulations are necessary to make RESPA work. That's what people follow. There's a safe harbor for following the regulations and so that instruction that you must issue regulations on this point and here's how to do it, you need to have the model forms in it, doesn't trump the general authorization in 2617 to make exemptions where necessary. Thank you. Thank you so much. Mr. Levin. If it may please the Court, Frederick Levin for PNC Bank. Through amicus litigation rather than rulemaking, the CFPB has in effect invited the regulatory history. This court should reject that invitation and affirm the judgment of the district court because neither the act nor TILA's regulatory history support the conclusion that a HELOC is a credit card plan. Congress used words precisely in the act. When Congress intended to impose a duty based on use of a credit card alone, it said so. For example, section 1666 E imposes a duty on a seller where a credit card has been used to obtain credit. In contrast, Congress employed very different language to trigger application of the offset duty, an issue here. The trigger for the offset prohibition was not use of a credit card, but instead a transaction arising under the relevant credit card plan. Counsel, do you deny that Mr. Lyons was issued a credit card in connection with his HELOC? The short answer is no. He was issued a credit card. Okay, and do you deny that the credit card? The HELOC permits him to access his HELOC line of credit using the credit card. In various ways, he can go get a cash advance, he can use it to buy goods and services directly, correct? There's, as far as I'm aware, there are no limits on what he can use his credit line to access. He can use the credit card to access the line for whatever purposes he chooses. And so, I guess my challenge here is, I kind of, I mean, I don't really disagree with a part of what you say, which is that HELOC is known as a specific type of credit arrangement. And I don't disagree that, you know, that there's a might not involve a HELOC. But we have the challenge here of an undefined term. I mean, you talk about all the precision, and there is a lot of precision, but there is also not a lot of precision necessarily on credit card plan. And so, I'm wondering why, you know, it would be perhaps wrong to say HELOCs categorically are credit card plans. But instead, to look at the HELOC, and if it involves the issuance of what you conceive to be a credit card, and if it has some terms and conditions on the use of that card, why, what's the argument that that doesn't fall under a credit card plan? Because whatever the history of TILA regulation, well, I'll give you a couple of points. The first point is, from the language I just read to you from the Act, the 74 Act, in which the Offset Prohibition was enacted, the language makes clear that use alone is not the trigger. Credit card access is not the trigger for the Offset Prohibition. What's 1974, before 1974, when the Act was, when the Offset Prohibition was enacted, by regulation, the board clarified that an open-end real estate mortgage, a home support product, would not be regulated as open-end credit. So, at the time Congress passed the bill, credit card plan, which is the quintessential form of open-end credit, would not have been intended. But then when you look at the history of regulation under TILA and regulations for 40 years, when TILA and the Offset Prohibition coexisted, there's not a single example of the Offset Prohibition being applied to a TILA. That's point one. Two, I think Ms. Farley just acknowledged, there's no offset to a HELOC. And then when you look at the conduct of the Federal Reserve Board, every time the issue, every time the board addressed whether a credit card access feature changed the fundamental character of a HELOC, such that it should be regulated as a credit card plan, it answered that question with a resounding no. And we heard talk about the Credit Card Protection Act of 2009, and what happened in that is there's a whole series of new credit card provisions, and the board went in, changed the definition under TILA, and created a definition and expressly accepted HELOCs. Why doesn't that undermine your position? It seems to me that when Congress passed a statute with some requirements and didn't want HELOCs to be covered, at least the board adopted a definition that excluded them. Yet it didn't go back to this regulation, to this provision we're talking about, and say, okay, there's this other place that we want to make sure HELOCs aren't covered by. There's two answers to that question. One was given by the Fed at the time it issued that statement, which is contrary to the suggestion, there are arguments. In explaining what it did in 2009, the Fed stated that its decision was consistent with the board's historical treatment of HELOC accounts accessible by cards under TILA. So that decision at that time was not something about that act. It was in keeping with the general understanding that a HELOC is not a credit card plan. Counsel, I know you got another reason. I want to let you use it. It seems like, I interpret statutes by historical practices and what people said. Usually the best evidence of what Congress meant is what the statutes say. Congress also uses open-ended credit cards secured by primary dwelling and uses that term. It uses it in 1637. It uses it in the Civil Action section. So it's been real easy to exclude home equity type arrangements from that. I get the argument that we think of credit card plan as a traditional sort of thing, but I'm just having trouble seeing why you can't. Just because that is often a credit card. So the reason is, and I understand that what the court is struggling with, but go back to the beginning of time in 1974 when this act was enacted. There is specific words in the statute that I read to you which talks of where in one case the duty of that statute was triggered by use or existence of an access, a credit card access feature and different language for the offset prohibition. So that tells you that use and access to a credit card isn't what makes the offset prohibition applicable. Also at that time the board had already determined that home secured open-end real estate mortgages were not open-end credit and therefore would not have been a credit card plan. So Congress knew that the offset prohibition wasn't going to apply. But I thought you conceded in your answer that this HELOC was an open-ended credit card, an open-ended credit plan. It is an open-end credit plan, but it is not a credit card plan. It's a different kind of open-end credit plan. But is it possible that there's credit card plans and under that there are HELOCs, but if that's a Venn diagram at times there's some overlap. And this might be one of those times because it involves a credit card and an agreement that has some terms about the credit card use. As a matter of pure syllogism I think what you said is possible, but it There's 40 years of history where in act after act and regulatory rulemaking after regulatory rulemaking, the Congress and TILA took care to distinguish credit card plans and HELOCs because they are fundamentally different credit products. And so the understanding when the offset prohibition was enacted was that it would not apply to this home secure transaction. The language in the statute points in that direction. The regulatory history points in that direction. And so what the reason you say well why didn't they go and make a special in 2009 when they did the CARD Act, why didn't they go and take care of the offset prohibition? They didn't need to because it was understood through 40 years of history from the fact that that provision has never been applied to a HELOC ever. It's not been cited by appellant. The CFPB hasn't cited an example. And so when you're looking at, and I understand it's kind of a new question, but you've got to look where all the pointers are indicated. Start with the text, then go to the regulatory history, then go to the statements of the Federal Reserve Board when they talk about why they accepted HELOCs accessible by credit card from our historical practice to do so. And they did it in time, they did it in 2009, they did it in 1989. So they're telling you that and the reason they're doing it is because the statute, the products are fundamentally different, the credit card plans are fundamentally different. Judge Floyd mentioned the interest rate and it gives meaning to take into this account, take this into account, gives meaning to the concept of a credit plan. Credit plan is the constellation of contractual terms. And so the fundamental terms of credit in the HELOC are just different than in a credit card plan. The offset provision was plan. And so the question that's before you is whether the existence in a HELOC plan of this is one feature of the totality of the credit arrangement is this credit card access feature. Does that change the character of HELOC so much that it should be regulated as a credit card plan and fall within the reserve board looked at this time and time again and said no. It's an incidental feature. It doesn't fundamentally change the character of the line of credit as being a HELOC. So therefore the offset prohibition does not apply, which is exactly the point Judge Gallagher was getting at in her decision and her reliance on what they did in 2009 and their explanation for their reliance. But a HELOC is an open-end credit plan. It is an open-end credit plan, but it is not a credit card plan. I understand it, but why is that not the sine qua non of it? The whole purpose is that it that's the driving thing that's an open-end credit. And the credit card itself, that doesn't change the nature of it, does it? So that's an interesting point you raise and I'll answer it by pointing you back to the text of the Fair Credit Billing Act of 1974. If you read it provision by provision, there are multiple layers of rules and multiple layers of triggers for the application of those rules in that act. So the act starts off with rules that apply to all kinds of credit. Open-end credit, closed-end credit, credit card plans, HELOCs. The rule about and when the Congress intended that a rule for everybody, it used the word creditors. The duty was imposed on all creditors. Then you go down through the statute and the this is response specifically to point that you are making Judge Gregory. There are sections that impose duties with respect to open-end consumer credit plans. And they use the word open-end consumer credit plan four times in four different provisions. Then come the two provisions or two provisions about when use triggers application of the credit card. The triggers application of a duty. So the one I read to you earlier was when use of a credit card triggers the duty in question. And I distinguish that from the next provision which relates to the offset provision which uses very different language which says the duty is triggered by a transaction under a relevant credit card. So when you so the answer to your question is why isn't open-end credit just answer the question. It doesn't because it's in the statutory language that makes those fine distinctions. And then so the statute was enacted was enacted at a But there was a predecessor product and at that time called an open-end real estate mortgage. And by regulation issued before the 74 Act was passed the board had made clear that that was not open-end credit so it certainly wouldn't be covered by the offset prohibition to come. And to remove any doubt immediately after the the offset prohibition was passed the board issued another regulation reaffirming that that same predecessor product the open-end real estate mortgage would not would not be considered. So there you have all this evidence at the time that the offset prohibition would not apply. And then you have 40 years of history when it was never applied. And the board goes out of its way to to distinguish at every rulemaking. And Congress too. Congress passed separate laws dealing with credit cards and HELOCs. But that may be true in terms of where you went or down where it doesn't there's a creditor yes is a consumer. But the banking industry perhaps morphed itself into it by wanting to make these credit cards accessible to consumers. And then you know the acts like a duck and quacks. I mean it is a duck. I mean it's you wanted credit card into form to have the same access it does any other credit card. And see me it falls in the definition. It's an open-end. It's a wanted a consumer to use that plastic. Only difference is it's just this is the enumerative maybe of adding the encumbrance on your real property. But you it's a credit card. One is is one the credit card in open-end regular credit card line. It is the essence of the plan. Here home secured plan. HELOC the access is an incident. Whether you use whether you use a credit card you get a check or an advance by calling in as Judge Cuddebombs suggested. The motive access is irrelevant. The fundamental underlying question is what kind of credit plan is this? Does this have the credit term and a credit arrangement of a HELOC? Or is it the credit arrangement of an unsecured line like a credit card plan with the higher interest rate? And that goes to the policy question. Right? The trouble is we I mean that has some logic to it. But it puts you know it asks us you know I know you point to the text but it seems like most of your reasonings are outside the text. And we're trying to look and see what a credit card plan is. And I don't you know I don't disagree that there's no way it would have been thought about in 74 because it didn't exist. I mean but that that can't be our rule. If the credit card is an unsecured line of credit characterized by a higher interest rate different acts different regulatory provisions mandated by HELOC. The same is true with HELOC. HELOC primary characteristic is home secured credit lower secured credit and very specific HELOC disclosures mandated by TILA that are not mandated for credit card plans. For example the requirement of a committed line of credit which Mr. Lyons had the benefit of which limited the circumstances under which PNC could terminate credit. So he had a HELOC plan and as you pointed out Judge Gladelbaum earlier if there were no credit card access feature it'd be no question it's a credit card plan and the offset prohibition wouldn't apply. And the reason why the history is relevant because every time when the question came up the board treated that feature as an incident not a fundamental characteristic of the HELOC plan. Because it's an incident because there are other ways. For example on this plan there were two other ways Mr. Lyons could have accessed his line, his credit line. So the question ultimately is the credit card access feature an incident or fundamental characteristic of the HELOC plan? And the board has consistently said it's merely an incident. I got one more question. I'm more interested in answering this question based on the text. But usually consequences are more Congress's business than ours. We say what the law says. But it just seems to me as a practical matter that bank if we were to say this particular type of HELOC is a credit card plan you know the earth wouldn't crumble. That there's not whether or not it was intended or not if it falls within the definition most people with HELOCs you know probably aren't subject to or probably more likely to be you know paying their relevant at the end of the day. But I'm just curious as to what's really at stake here. So I want to make two points. I want to answer your question which goes to how the court should look at it. So when you look at the policy behind the offset prohibition the issue was the agreement between the parties for a credit card is unsecured credit. And if you could use the offset to obtain secure credit in effect security that the parties didn't agree to you'd be charging interest as if it was unsecured credit when you took security. The HELOC is completely different. The HELOC there is this it is secured credit. The customer is benefiting from the lower secured rate and there is a consumer protective element which is which is that where we're and this is the fundamental focus of TILA regulation under HELOCs which is the foreclosure risk related to the use the funds on deposit to secure a small monetary default you thereby head off the foreclosure path. So there are good policy reasons to treat this difference. So that your point is that if we you know if the offset it doesn't apply to HELOCs then you're more likely to initiate foreclosure proceedings. Is that the point? I'm saying that there that it is it may be there are often situations where it is better for the homeowner to be able to secure monetary default on more money that affects their home. And that is a reason why the not applying the offset of prohibition to a HELOC. They can always do that themselves right? I'm not I mean if they got the money there and they're about to be foreclosed all they got to do say whoa whoa whoa whoa here's my money stop it. But it prevents the path of foreclosure. That's all I'm saying. So there is a consumer protective point. I would point out one other thing just in terms of again focusing on the history and the understanding of the offset prohibition and whether HELOCs a credit card plan that the amicus brief pointed out the ABA amicus brief pointed out that when the Bureau took over reporting obligations under TLOC it's required by statute to report biannually on the efficacy of credit card plan disclosures and other protections and writes reports to Congress. When it makes those reports it does not include HELOCs in those reports. It doesn't include HELOCs accessible by credit cards in those reports because it knows they're not credit card plans. That ultimately from the beginning until now everybody has understood that a HELOC is a All right so here's the issue. Historically HELOCs have been treated differently because the home's at risk. So if you look what happened in 2009 the only reason they passed that because they realized non-HELOC credit card transactions weren't getting the disclosures that they thought they Federal Reserve Board looked at it they said we're going to exclude HELOCs because there's already in fact if you look at if you look at the federal regulation 74 FR 54 129 they say there's existing rules already that cover that so there was no reason so really we're taking a credit card act that was passed in 2009 which was designed to increase the consumer protection and saying somehow it decreased the consumer protection under the offset provision doesn't make any sense when you keep saying that they never they've made distinctions they made distinctions because the homes at risk which means they always wanted them to have more disclosures if they were going to put their home at risk as opposed to just a unsecured debt the policy this idea that somehow that we have to treat the homeowner like a child and he has to you take the money from him because he might spend it on something foolish and lose his house there's lots of reason I represent people the idea that you know $500 is no big deal to people is wrong if I have a homeowner who has a car repair for $500 or a HELOC for $500 and if the car doesn't get repaired he should have the right to make that decision so he might pay a late charge but this whole idea that somehow this is helping prevent foreclosures under my example it ruins the person it assures the foreclosure they didn't make the car repair they don't but they're not able to get to work that's what we're talking about and then on the RESPA side that again is designed to give to have a way for a homeowner to question what they're being charged for things how could that be a bad thing why is the rationale that we have to take that away from someone who has a HELOC why it's no different the same I mean every other federally related mortgage has the threat of foreclosure so does the HELOC but we're saying that they should be treated differently there's no rational basis and I think respectfully 2605 I think the reason Jay is there is to per to limit 2617 so a homeowner has the right to make a choice between what bills they're going to pay they shouldn't be required to pay the HELOC because the bank happens to also have their hands in their deposit account and second there's no reason not to allow rest a person who's got a mortgage a loan secured by a mortgage to ask the same questions and any other mortgage owner that's what 2605 does that prevents foreclosures that doesn't there's no policy reason to stop foreclosures by not giving them the ability to ask information so we'd ask you to reverse on both claims thank you your honors unless you have questions question maybe a kind of unfair because I'm asking you to get into your colleagues head or this other side's head but what do you think that they see as a downside of excluding rest book price for you like what's the downside another side not yours what's their downside is they made all these heel locks out there with credit cards and they have they've been want to go back and give them give those disclosures well they didn't give the disclosures but more importantly they took the people's money without I mean think about it what they're saying is that somehow this consumer protection statute should be interpreted in such a way that no other creditor would be allowed to do what they're saying they should be allowed to do which is to go in I mean we have the whole line of cases Fuentes all of those cases and those involved like WT grant case involved where there was actually a court procedure for prejudgment attachments in the court said no this is unfair this a violation of due process that's what they're arguing for we want the right to dip into the guy's account anytime we want and even though there's a statutory provision on their consumer protection law that's supposed to be read broadly you should interpret it that it doesn't apply to us because we have a greater threat to this particular consumer we can take his home there's no there's no exception because they're a stronger creditor to basic due process no no I was thinking about you know because you try to these cases obviously we have to go about what the law is that you try to understand what's on in a sense that if you you're securing a home in this helix it's almost like you want access to what sort of like the credit card industry because it seemed sort of kind of in the kind of indication that you want someone who owes you money for their home why why do you want them to encumber the home more with consumer purchases kind of interesting to me you think like you want them to pay the mortgage on time but why do you have this thing that you want them to add to that debt with consumer purchases you know and but then you say but no no no we want to be able to have different yeah I just I don't know I mean we watched I mean 90s and 2000 early 2000s you saw the ads that they put the bank in the picture or your house in the picture is a piggy bank saying go ahead and borrow against it I mean the answer is as long as it's a they're secure enough to think that worst case they're going to get their money back why not I mean they sell credit that's their business and I'm not saying there's anything wrong with that but that's that's their business but credit card you jump all the way in not halfway perhaps right and and you put your home at risk right so if you if we were to rule with you you know perhaps what needs to happen before that we come back and see whether the that the agreement and the deposit account was insufficient approval or we deal maybe with the damages provision we you got there a lot of a lot of issues even if you're right here still to come correct right but I think here's the point I don't think the deposit just that's not even before I'm just okay I would just say the deposit agreement I mean there's very specific provisions and how how they have to go about it I don't think you can enclose it in the deposit agreement for one thing keep in mind under truth and lending act if you're taking a security interest you have to tell them so that deposit agreement would have to comply with the truth and lending act and it doesn't but I don't think it would override the statute in any event so you know that's thank you thank you counsel we're going to ask the clerk to adjourn the court until tomorrow morning we'll come down and greet counts this honorable court stands adjourned until this afternoon God save the United States and this honorable court
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Henry F. Floyd